AO 91 (Rev. 11/11)  Criminal Complaint

LODGED
CLERK, U.S. DISTRICT COURT
04/19/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: ___AP___ DEPUTY

# UNITED STATES DISTRICT COURT
for the
Central District of California

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>v. )<br>GUSTAVO ZAMBRANO, )<br>)<br>)<br>)<br>Defendant(s) ) | Case No. 5:22-mj-00241<br><br>FILED<br>CLERK, U.S. DISTRICT COURT<br>4/19/2022<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY: ___ram___ DEPUTY |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __April 7, 2022__ in the county of __Riverside County__ in the __Central__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), and (b)(1)(A)(vi), | See attached affidavit |

This criminal complaint is based on these facts:

Please see attached affidavit.

☑ Continued on the attached sheet.

/s/ signed pursuant to Fed. R. Crim. P. 4.1
_____
Complainant's signature

HSI Special Agent, Michael R. Juneau
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: __April 19, 2022__

_____
Judge's signature

City and state: __Riverside, CA__   Honorable Kenly Kiya Kato, U.S. Magistrate Judge
Printed name and title

AUSA:   Courtney N. Williams (951-368-1473)

**AFFIDAVIT**

I, Michael R. Juneau, being duly sworn, declare and state as follows:

## I.   INTRODUCTION

1. I am a Special Agent ("SA") of the United States Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI") since November 2010 and an "investigative or law enforcement officer of the United States" within the meaning of 18, U.S.C. §§ 2510 (7).  As such, I am empowered to conduct investigations of, and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.  I am currently assigned to the ICE, HSI, Office of the Assistant Special Agent in Charge ("ASAC"), Riverside, California, Inland Empire Border Enforcement Security Taskforce ("IEBEST").  My primary duties involve the investigation of narcotics, firearms, and illicit proceeds.  This group is tasked with investigating criminal organizations trafficking in illegal narcotics operating in, around, and through Riverside and San Bernardino Counties.  I have been assigned to this group since January 2022.

2. During my assignment with the IEBEST, I have exclusively investigated narcotics-related crimes, on both a state and federal level.  This includes investigations and arrests for possession and sales of methamphetamine, cocaine, heroin, and fentanyl, and bulk currency seizures related to drug trafficking.

3. I have participated in many aspects of narcotics investigations, including authoring and executing State and federal search warrants, the use of California State and federal wiretaps, the use of GPS tracking equipment on vehicles, cellular telephone geo-location "ping" tracking, surveillance of large-scale Drug Trafficking Organizations ("DTOs"), arrests, and prosecutions. I am familiar with large-scale DTO methods of operation including the manufacturing, distribution, storage, and transportation of narcotics. I also have knowledge regarding the collection of proceeds related to narcotics trafficking, including methods of money laundering used to conceal the nature of narcotics proceeds.

4. Based on my training, experience, and conversations with other narcotics investigators, and my previous experience in the law enforcement field, I am familiar with drug traffickers' methods of operation, including the distribution, storage, transportation of drugs, the collection of drug proceeds, and methods of money laundering used to conceal the nature of the proceeds.

5. I have received training and have collaborated with other law enforcement officers about investigations regarding the unlawful importation, possession, and distribution of controlled substances, as well as related money laundering statutes involving the proceeds of specified unlawful activities and conspiracies associated with criminal narcotics, in violation of Titles 18 and 21 of the United States Code.

## II. PURPOSE OF AFFIDAVIT

6.  This affidavit is made in support of a criminal complaint and arrest warrant against Gustavo Zambrano ("ZAMBRANO") for a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi): Possession with Intent to Distribute at Least 400 Grams of a Mixture or Substance Containing a Detectable Amount of Fentanyl.

7.  The facts set forth in this affidavit are based upon my personal observations; my training and experience; and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

## III. SUMMARY OF PROBABLE CAUSE

8.  On April 7, 2022, Acting Watch Commander ("AWC") Paul Bak-Sklener and Border Patrol Agent("BPA") Robert Muro (collectively referred to as "BP") were performing interdiction duties within the Murrieta Border Patrol Station's area of responsibility ("AOR") along the Interstate 15 corridor. BPA Muro was operating a marked Border Patrol vehicle in full uniform equipped with emergency lights and siren, and AWC Bak-Sklener was riding passenger conducting records checks on his government issued tablet.

9. BP observed the driver, later identified as ZAMBRANO, in a white Nissan Altima ("Nissan"), bearing California License Plate 8GPS127, exhibiting driving behaviors consistent with smuggling activity.

10. Queries of law enforcement databases indicated ZAMBRANO entered the United States from Mexico earlier that morning. Records further indicated ZAMBRANO previously had his Trusted Traveler, Secure Electronic Network for Travelers Rapid Inspection ("SENTRI") card revoke in 2018. The database noted that the card was revoked because of an association to alien smuggling.

11. Believing that the Nissan was involved in illegal activity, BP conducted a vehicle stop at or around the Interstate 15 Immigration Checkpoint at approximately 9:48 a.m.

12. AWC Bak-Sklener requested permission to search the trunk of the Nissan. ZAMBRANO granted permission. During the search of the Nissan, BPA Muro located a box in the trunk, filled with 10 packages of what appeared to be M30 Fentanyl pills based on their markings and coloration.

13. A further search of the Nissan revealed a total of 20 packages of M30 Fentanyl pills weighing approximately 22.65 Kgs (approximately 200,000 pills).

## IV. STATEMENT OF PROBABLE CAUSE

14. On April 7, 2022, at approximately 9:40 a.m. BP agents were traveling north on Interstate 15 while performing interdiction duties within the Murrieta Border Patrol Station's AOR near Temecula, California. BP observed a white Nissan

Altima pass their marked unit in the fast lane traveling faster than the speed of flowing traffic.  As the Nissan passed, BP observed the driver sitting very stiff in his seat with both hands gripping the steering wheel at the 10 and 2 positions.  It is common for those involved in illicit activity to exhibit stiff or uncomfortable behavior while inside their cars because they are nervous and afraid of being stopped.

15.   After the Nissan passed, BP saw that the license plate frame said "National City" on it.  National City is a city located in San Diego and outside of the area.  While it is not uncommon for vehicles from National City to be in the area of Temecula, individuals from that area are usually traveling to Temecula for work and are normally traveling during standard work hours from 6:00 a.m. to 8:00 a.m.

16.   BP looked up the vehicle registration information and found that the vehicle was registered to "Gustavo Alberto Zambrano with a vehicle registration address in Chula Vista, California.

17.   Law enforcement databases also revealed that ZAMBRANO was the driver and sole occupant of the Nissan when he crossed into the United States from Mexico through the San Ysidro, California Land Border earlier that morning at 7:48 a.m.  It is common for smugglers to wait some time before traveling North to their drop off location to ensure they are not being followed. Those same databases showed that the Nissan had no recent crossings through the Interstate 15 Immigration Checkpoint, indicating the Nissan does not frequent the area.

18. Database queries on ZAMBRANO indicated ZAMBRANO's SENTRI[1] card was revoked, noting a high-risk association to alien smuggling.

19. BP proceeded to drive ahead of the Nissan in the lane to the right of the Nissan. After passing the Nissan, BP slowed down well below the speed limit, and the Nissan slowed down in an attempt not to pass. As the Nissan passed the marked Border Patrol vehicle, AWC Bak-Sklener observed several air fresheners hanging from the rearview mirror. It is common for smugglers to utilize a large number of air fresheners in their vehicles to mask the odor of narcotics or concealed humans.

20. Believing that the Nissan was involved in illegal activity, BP conducted a vehicle stop near the Interstate 15 Immigration Checkpoint at approximately 9:48 a.m.

21. AWC Bak-Sklener approached the passenger side window and identified himself as a United States Border Patrol Agent. AWC Bak-Sklener questioned ZAMBRANO as to where he was coming from and where he was going. ZAMBRANO stated that he was coming from Mexico and going home to Fontana, California.

22. AWC Bak-Sklener then asked how often he used the Nissan to travel home to Fontana, California. ZAMBRANO stated the Nissan belonged to him and has had it for four years. ZAMBRANO further stated he drives to Fontana all the time. AWC

---

[1] SENTRI provides expedited customs processing, at the U.S.-Mexico border, of pre-approved travelers considered low-risk. To obtain SENTRI certification, applicants must voluntarily undergo a thorough background check against criminal, customs, immigration, law enforcement, and terrorist databases; a 10-fingerprint law enforcement check; and a personal interview with a CBP Officer.

Bak-Sklener was aware that the Nissan has not recently crossed the Interstate 15 Immigration checkpoint, so he knew this statement was not true. ZAMBRANO then stated he worked at Camp Pendleton and provided an identification card.

23. Because of his suspicious driving pattern, his association to alien smuggling and his false statements, AWC Bak-Sklener requested permission to search the Nissan. ZAMBRANO agreed. During a search of the Nissan, BPA Muro located a box in the trunk, filled with ten packages of what appeared to be M30 Fentanyl pills based on their markings and coloration.

24. At approximately 9:50 a.m., AWC Bak-Sklener placed ZAMBRANO under arrest for violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi): Possession with Intent to Distribute at Least 400 Grams of a Mixture or Substance Containing a Detectable Amount of Fentanyl.

25. ZAMBRANO and the Nissan were transported to the Murrieta Border Patrol Station for further processing. While at the station, AWC Bak-Sklener located three more bundles in a shipping box behind the passenger seat on the floor, three bundles located behind the driver's seat on the floor in a plastic bag. Furthermore, BPA Muro located four bundles in the center console under the gear shifter.

26. A total of twenty packages of pills, which tested positive for fentanyl, weighing approximately 22.65 Kgs (approximately 200,000 pills) were discovered in ZAMBRANO's vehicle. BPA Muro also located $1,323 in U.S. currency and $4,950 in Mexican Pesos in ZAMBRANO's possession.

27. Riverside County Sheriff's Department ("RCSD") Investigators J. Alcontar and S. Sanchez and I responded to the Murrieta Border Patrol Station to assist in the investigation.

28. ZAMBRANO was read his rights per *Miranda* by Investigator Alcontar. ZAMBRANO acknowledged that he understood his *Miranda* rights and waived his rights, agreeing to answer questions without an attorney present.

29. The following is a summary of what was stated during the audio recorded interview.

    a. ZAMBRANO stated he lives in Tijuana, Mexico and regularly crosses the United States-Mexico border. ZAMBRANO stated he was born in Chula Vista, California. ZAMBRANO stated he was previously employed as a Panda Express restaurant manager on a military base in San Diego County; however, he is no longer employed.

    b. On this date, April 7, 2022, ZAMBRANO stated he met an unknown male, who gave him the box of narcotics at the Target-Home Depot shopping center located on Palm Avenue near the United States-Mexico border.

    c. Once the narcotics were loaded into ZAMBRANO's Nissan, ZAMBRANO drove north, away from the border. He stated he was directed to drive to a location in Jurupa Valley.

    d. ZAMBRANO stated he has delivered to this location in the past. On prior deliveries, ZAMBRANO drove to the Jurupa Valley location, and the Mexican coordinator would send him a telephone number to call. ZAMBRANO stated he would inform the receiver of narcotics that he arrived at the location. ZAMBRANO

stated the receiver would meet him at a shopping center and direct ZAMBRANO to a different location where the narcotics were exchanged.

   e. ZAMBRANO stated he was knowingly transporting illegal narcotics but did not know what type.

   f. At the conclusion of the interview, ZAMBRANO was transported to the Riverside County Southwest Detention Center for booking and processing. The fentanyl pills were turned over to Investigator Alcontar and booked into evidence at the RSO Southwest Station under RSO report number R22-097-0004.



## V. CONCLUSION

30. For all the reasons described above, there is probable cause to believe that ZAMBRANO has committed a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi): Possession with Intent to Distribute at Least 400 Grams of a Mixture or Substance Containing a Detectable Amount of Fentanyl.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this <u>19th</u> day of <u>April</u>, 2022.

_____
UNITED STATES MAGISTRATE JUDGE